# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

|  |  |  |
|---|---|---|
| ERIC DANTE WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:22-cv-01641-CBB |
| | ) | |
| vs. | ) | United States Magistrate Judge |
| | ) | Christopher B. Brown |
| M. HOUSTON, LIEUTENANT; J. | ) | |
| BEUCHAT, CAPTAIN; K. GEIBEL, | ) | |
| SERGEANT; S. BALSAMO, | ) | |
| CORRECTIONAL OFFICER; J. | ) | |
| FLICKINGER, CORRECTIONAL | ) | |
| OFFICER; Z. POWELL, | ) | |
| CORRECTIONAL OFFICER; E. | ) | |
| CHRISTMANN, CORRECTIONAL | ) | |
| OFFICER; J. FISCUS, | ) | |
| CORRECTIONAL OFFICER; AND J. | ) | |
| SHAW, CORRECTIONAL OFFICER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

**CHRISTOPHER B. BROWN, United States Magistrate Judge**

Pro se plaintiff Eric Dante Wells ("Wells"), a prisoner at the State
Correctional Institution at Mercer ("SCI-Mercer"), brings this civil rights action
under 42 U.S.C. § 1983 against several Department of Corrections ("DOC") officers
and employees concerning their actions during a medical emergency he experienced
on June 25, 2022.

---

[1]     All parties have consented to jurisdiction before a United States Magistrate
Judge pursuant to 28 U.S.C. § 636.  *See* ECF Nos. 20, 29, and 46.

Pending is Defendants' Motion for Summary Judgment, ECF No. 59, Wells's brief in opposition, ECF No. 69, Defendants' Reply Brief, ECF No. 72, and Wells's Sur-Reply, ECF No. 74. The motion is fully briefed and the factual record thoroughly developed. ECF Nos. 60, 61, 62, 67, and 68.

After careful consideration of the motion, the material in support and in opposition thereto, the parties' memoranda, the relevant case law, and the summary judgment record as a whole, the motion for summary judgment will be granted in part and denied in part. Summary judgment will be granted on Wells's Eighth Amendment claim of deliberate indifference to his serious medical needs. However, the Court finds that issues of material fact exist from which a factfinder could decide that Defendants used excessive force during and after the medical emergency. Therefore, summary judgment will be denied on that claim.

## I.    Factual and Procedural Background[2]

On June 25, 2022, Wells suffered a grand mal seizure. Wells claims that Defendants, the responding corrections officers, misdiagnosed his symptoms as a drug overdose and incorrectly initiated an "overdose" protocol by administering Narcan prior to medical personnel arriving on the scene. Wells alleges that Defendants violated his Eighth Amendment rights by (1) being deliberately indifferent to his serious medical needs and (2) by using excessive force on him during and after his medical emergency.

---

[2]    The factual summary is derived from Wells's verified amended complaint, Defendants' concise statement of material facts, Wells's responsive concise statement, and the exhibits submitted by the parties' in support of their respective positions.

On November 18, 2022, Wells filed a Motion for Leave to Proceed in forma pauperis (the "IFP Motion").  Attached to the IFP Motion was a verified Complaint which named Lieutenant Houston and three John Doe defendants.  ECF No. 1-1. The IFP motion was granted on December 5, 2022, and the Complaint officially filed that day.  ECF No. 8.  Defendant Houston filed an Answer on June 15, 2023.  ECF No. 23.

On August 22, 2023, with leave of court, Wells filed an Amended Complaint in which he named nine corrections officers:  M. Houston, J. Beuchat, K. Geibel, S. Balsamo, J. Flickinger, Z. Powell, E. Christmann, J. Fiscus, and J. Shaw.  ECF No. 34.  Because the Amended Complaint was not signed, the Court returned it to Wells, directing him to sign the Amended Complaint and return it for refiling.  ECF No. 35.  On August 31, 2023, the Court received the signed verified Amended Complaint and docketed it at ECF No. 39.  Defendants filed an Answer on October 23, 2023. ECF No. 48.  The Amended Complaint remains Wells's operative pleading.[3]

After the discovery period closed, Defendants filed the instant motion for summary judgment.  ECF No. 59.

## II.   Jurisdiction and Venue

The Court has jurisdiction over Wells's case pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases

---

[3]     "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity."  *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019).  "Thus, the most recently filed amended complaint becomes the operative pleading."  *Id.*

3

arising under the Constitution, laws, or treaties of the United States.   Venue is proper in this district as the alleged acts and omissions giving rise to Well's claims occurred at SCI-Mercer, located in Mercer County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## III.   Legal Standards

### A.   Summary Judgment Standard

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well settled.   Rule 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Under this standard "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuin*e issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).   A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir. 1992).   An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.   *Anderson,* 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Anderson,* 477 U.S. at 256. To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond its pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.   *Pro Se* Pleadings and Filings

Wells is proceeding *pro se,* thus he is entitled to a liberal reading of his pleadings and documents filed in opposition to the pending motion. *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("[t]he obligation to liberally construe a pro se litigant's pleadings is well-established."). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982).

Nonetheless, at the summary judgment stage of the proceedings, the Court need not credit bald assertions or legal conclusions unaccompanied by evidentiary support. *Celotex,* 477 U.S. at 324. "But a *pro se* plaintiff is not relieved of his

obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Alston v. Little*, Civ. Act. No. 1:22-cv-00183, 2024 WL 3048017, *2 (W.D.Pa. May 28, 2024) (quoting *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017)) (citation omitted).

Because Wells is a *pro se* litigant, this Court will consider the facts and make inferences where it is appropriate.  In examining the record, and in consideration of Wells's *pro se* status, the factual allegations set forth in his verified Amended Complaint also will be considered as evidence to the extent that they are based on his personal knowledge.  *Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) ("Because [statements in verified complaint and other court filings] were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit.");  *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion). *See also Brooks v. Kyler*, 204 F.3d 102, 108 n.7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from [a pro se prisoner] at the summary judgment phase of the proceedings").

## C.    Civil Rights Statute, 42 U.S.C. § 1983

Wells brings his claims under 42 U.S.C. § 1983,[4] which provides in pertinent part:

---

[4]    Title 42, United States Code, section 1983 "is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citation omitted).

> Every person who, under color of any statute, ordinance,
> regulation, custom or usage, of any State or Territory,
> subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, . . . .

To prevail on a claim pursuant to Section 1983, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *see also Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994)(citations omitted). The Amended Complaint alleges Defendants violated Wells's Eighth Amendment rights by their deliberate indifference to his serious medical needs and by using excessive force.  Defendants do not dispute that at all relevant times they were acting under color of state law.  Thus, the Court's analysis focuses on whether Defendants deprived Wells of rights secured by the Eighth Amendment.

## III.   Discussion

### A.   Exhaustion Under the Prison Litigation Reform Act

Defendants first move for summary judgment on the ground that Wells failed to exhaust his administrative remedies prior to bringing suit.  ECF No. 60 at 3-6. Wells responds that his administrative remedies were rendered unavailable because his final appeal was not responded to in a timely manner.  Whether a prisoner has exhausted administrative remedies is a question of law that is

determined by the court, even if that determination requires the resolution of disputed facts.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  As recently explained by the Court of Appeals for the Third Circuit:

> The exhaustion mandate is a "centerpiece" of the statute, *see Woodford v. Ngo,* 548 U.S. 81, 84 (2006), that serves three important statutory goals: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits, *Spruill [v. Gillis],* 372 F.3d [218,] 230 [3d Cir. 2004].  The PLRA requires "proper exhaustion," *Woodford,* 548 U.S. at 92, which means "complet[ing] the administrative review process in accordance with the applicable procedural rules." *Downey v. Pennsylvania Dep't of Corrections*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Woodford*, 548 U.S. at 88).  The only limit on § 1997e(a)'s mandate is that "administrative remedies must be available to the prisoner" as both a formal and practical manner.  *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 641-42 (2016)).

*Talley v. Clark,*  111 F.4th 255, 262 (3d Cir. 2024).  An administrative remedy is unavailable, and administrative exhaustion is thus excused, when it "operates as a simple dead end(,) . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' "

*Downey v. Pennsylvania Dep't of Corrections*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)) (internal quotation marks omitted).  "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Shifflett*, 934 F.3d at 367 (stating, "[w]hat is good for the goose is good for the gander.").  "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Id*. at 365.

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Spruill v. Gillis*, 372 F.3d 218, 230-31 (3d Cir. 2004) (explaining that "prison grievance procedures supply the yardstick for measuring procedural default.").  Therefore, the procedural requirements for exhaustion in each case "are drawn from the policies of the prison in question rather than from any free-standing federal law." *Shifflett*, 934 F.3d at 364.

It is not the plaintiff's burden to affirmatively demonstrate exhaustion. *Jones,* 549 U.S. at 217 (holding that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").  Instead, the failure to exhaust must be asserted and proven by the defendant.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The Pennsylvania DOC has adopted a three-step grievance process set forth in DC-ADM 804.[5]  First, after an attempt to resolve any problems informally, a prisoner may submit a written grievance to the facility's Grievance Coordinator for initial review.  If dissatisfied with the results of the initial review, a prisoner must then appeal to the Facility Manager.  If the prisoner receives an adverse response from the Facility Manager, the prisoner then must appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), the final level of review.  DC-ADM 804 states that SOIGA will respond within 30 working days of <u>receipt</u> of the grievance.  *See* 37 Pa. Code § 93.9; DC-ADM 804; *Spruill*, 372 F.3d at 232.

Here, Defendants argue that Wells did not properly exhaust all administrative remedies available to him.  They argue:

> (1)  Wells failed to comply with the proper procedures when submitting his grievance for final review to SOIGA as he did not submit the required and/or legible documentation for proper review; and

> (2)  with the exception of Defendant Houston, Wells did not identify or adequately describe in his Grievance the remaining seven defendants in this lawsuit.

ECF No. 60 at 5 – 6.

Wells's summary judgment submissions dispute both of Defendants' arguments.  He argues that he placed his final appeal, with all required paperwork, in the prison mail system on September 21, 2022, and calculated SOIGA's response due date as November 10, 2022.  ECF No. 69, at 15.  When he did not receive a

---

[5]     Defendants did not attach a copy of DC-ADM 804 to their motion, but state the policy is available online at www.pa.gov.  ECF No. 60 at 4, n.1.

response from SOIGA by this date, he "construed this failure to respond as a denial and proceeded to file the appropriate documents to commence this lawsuit."  ECF No. 68 at ¶ 22.  According to Wells, SOIGA's failure to respond in a timely manner rendered the DOC's administrative remedies unavailable to him.  ECF No. 69, at 12-14.  *See Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that the exhaustion requirement satisfied where prison officials fail to timely respond to an inmate's properly filed grievance).

Defendants counter that their records show that Wells's final appeal was mailed on September 26, 2022, and was received by SOIGA on September 30, 2022, thereby making the SOIGA response due date November 15, 2022, which is the date SOIGA denied Wells's final appeal.  ECF No. 72, at 4.  Wells replies that (1) he placed his final appeal in the prison mail system for transmission to SOIGA on September 21, 2022, in compliance with DC-ADM 804, (2) he has no control when the prison put his envelope in the mail, and (3) he has no means to determine when SOIGA actually receives the grievance appeal.  He also has presented undisputed evidence that his prison account was charged $1.68 on September 21, 2022, for the postage to mail his grievance appeal to SOIGA.  ECF No. 68, ¶ 20.

The Court finds Defendants have produced no evidence suggesting that Wells received any notification of when his final appeal was <u>received</u> by SOIGA.  Although Defendants have produced their internal records showing the final appeal was postmarked September 26, 2022 and received by SOIGA on September 30, 2022, ECF No. 72-5, nothing in the summary judgment record indicates that Wells had

access to this information or that he received notification of when the final appeal was received by SOIGA.  Under these circumstances, the Court finds that Wells's calculation of the response date was reasonable, that under that calculation SOIGA did not respond within the time prescribed under DC-ADM 804, and, as a result of the untimely response, the administrative remedies were unavailable to Wells and he has fully discharged the PLRA's exhaustion requirement. *See Shifflet,* 934 F.3d at 359; *Robinson v. Superintendent Rockview SCI*, 831 F.3d at 154.  Thus, this asserted exhaustion defense does not provide a basis for an entry of summary judgment.

In the alternative, Defendants argue that Wells has failed to properly exhaust because his grievance does not contain appropriate identification of the offending parties.  ECF No. 60, at 6.  Wells responds that during the medical emergency he was not able to visually identify all responding corrections personnel, but that the description in the grievance of "all responding correctional personnel" was adequate identification to place prison officials on notice and the DOC investigation would have revealed the identities of the "responding correctional personnel."  ECF No. 69, at 15.

"[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (quoting *Jones*, 549 U.S. at 219). "The PLRA itself does not have a 'name all defendants' requirement." *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (citing *Jones*, 549 U.S. at 217).  However,

DC-ADM 804 requires that the prisoner "identify individuals directly involved in the events." *Green v. Maza*, Civ. Act. No. 1:17-cv-223, 2020 WL 1249205, at *5 (W.D. Pa. Mar. 16, 2020). The Court of Appeals has held that "in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corrections*, 146 F. App'x 554, 557 (3d Cir. 2005) (emphasis added).

Here, Wells submitted Grievance 992075 related to his June 25, 2022 medical emergency. ECF No. 61-2. The grievance states, "Lieutenant Houston and other responding correctional personnel" interfered with Wells's medical treatment during his medical emergency on June 25, 2022. *Id.* at 3. Defendants contend, with the exception of Defendant Houston, this language does not identify nor adequately describe the remaining seven individuals who are named as defendants in this lawsuit. ECF No. 60. The Court finds that Wells has provided a justifiable excuse for not identifying all the individuals involved in the incident – namely, that he was having a medical emergency and was not able to visually identify all the individuals.

The undisputed summary judgment record shows that Wells experienced a medical emergency on June 25, 2022 on GP Housing Unit - E-unit and that "correctional personnel" responded to the emergency. ECF Nos. 61-2, 61-3. The Court finds that the grievance contains a sufficient degree of identification which alerted prison officials to Wells's medical emergency and to Wells's concerns about

the medical treatment he received that day from the responding officers.  For these reasons, the Court finds that Defendants have not established the affirmative defense of failure to exhaust based on lack of identification.  Accordingly, their motion for summary judgment based on that defense also will be denied.

The Court now turns to the merits of Wells's claims.

B.    Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  U.S. Const. amend. VIII.  In the most general sense, a prison official violates the Eighth Amendment when two elements are established: (1) the prisoner alleges an objectively serious deprivation by a prison official of food, clothing, shelter, medical care, or safety; and (2) the prison official acted with a sufficiently culpable state of mind to deprive the inmate of his right to food, clothing, shelter, medical care, or safety. *Farmer v. Brennan*, 511 U.S. 825, 832, (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

Wells's claims will be addressed seriatim.

1.    Eighth Amendment Deliberate Indifference Claim

Prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribe." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).  Deliberate indifference can be established when "necessary medical treatment is delayed for non-medical reasons," *Natale v.*

*Camden Cty Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2002), or "[w]here prison authorities deny reasonable requests for medical treatment." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987). *See also Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

Wells's deliberate indifference claim is two-fold: (1) Defendants made medical judgments and rendered medical treatment without essential training, qualifications, or medical supervision; and (2) Defendants were deliberately indifferent to his pre-existing seizure disorder and incorrectly initiated an overdose protocol. ECF No. 39, § VI. Defendants move for summary judgment on this claim arguing that the medical care provided to Wells was exclusively rendered by the medical staff and that none of the Defendants knew about Wells's pre-existing seizure disorder. ECF No. 60, at 8-9.

Wells responds that prior to the nurse arriving on the scene, the corrections officers initiated an overdose protocol by giving him Narcan and had the Defendants recognized that Wells was experiencing a grand mal seizure, and not an opioid overdose, the "treatment given while waiting for medical personnel to arrive on scene would have vastly differed." ECF No. 69, at 5. He argues that the Defendants inappropriately made medical judgments and rendered medical treatment without essential training, qualifications or medical supervision.

Defendants have produced records which indicate all medical treatment was rendered by the SCI-Mercer medical staff and there was no delay in Wells's medical

care, as the medical staff arrived at the scene 3 minutes after the emergency was

reported.  For example, the Extraordinary Occurrence Report describes the incident

as follows:

> On 6/25/2022 at 1822, a medical emergency was reported via radio by CO1 E. Shultz on E Unit. Inmate Wells LS0414 was experiencing seizure like symptoms.  At 1825, Medical staff RN Michelle Merrick and LPN Sherry Kelly responded to the unit.  . . .  At 1828, LPN Kelly administered a dose of Narcan because the inmate was speaking in a manner not consistent with seizure disorder symptoms. At 1835, the inmate was administered a second dose of Narcan.  He was then placed on the stretcher, and transported to medical.  At 1850, after a medical evaluation in the medical triage room, and specifically by order of the on-call provider (PA Cassie Frank), the inmate was administered a third dose of Narcan.  The inmate's seizure symptoms began to subside. . . .

ECF No. 61-3, at 2.  The separate Medical Report prepared by RN Michelle Merrick

states,

> Called to Echo Block for possible seizure activity.  Upon arrival, inmate was on the floor on his Left side with guards present. 1 dose of Narcan was administered, inmate became combative and not following orders, then a second dose of Narcan was administered. . . .

ECF No. 61-4, at 14.  Additionally, the Initial Review Response denying Wells's

grievance states, "You claim LT Houston medically assessed you and administered

Narcan, neither of which is true.  You were assessed by a registered nurse, who also

administered the Narcan to you.  LT Houston made no medical decisions nor

performed any medical actions."  ECF No. 61-2, at 5.

The undisputed summary judgment record reflects that, despite Wells's bald assertions to the contrary, all medical care provided to him on June 25, 2022, was provided exclusively by the medical staff at SCI-Mercer.

The summary judgment record also reflects that none of the Defendants knew that Wells had a pre-existing seizure disorder.  In fact, Wells acknowledged this during his deposition testimony:

> Q:  Do you know whether any of [the named defendants] were aware that you had a seizure disorder on June 25th, 2022?
>
> A:  Outside of housing unit restrictions and employment restrictions, the remaining Defendants wouldn't know that unless they looked it up or they asked medical personnel. So, no, they wouldn't' have known that.
>
> . . . .
>
> Q:  So, just so that I'm clear, on June 25th, 2022, the Defendants did not know that you had a seizure disorder?
>
> A:  No, they did not.

ECF No. 61-1, at 22 (emphasis added).

Wells has produced no evidence from which a reasonable factfinder could find that Defendants were deliberately indifferent to his serious medical needs. Accordingly, summary judgment will be granted to Defendants on Wells's claim of deliberate indifference to his serious medical needs.

2.   <u>Eighth Amendment Excessive Force</u>[6]

When a prison defendant is alleged to have used excessive force in violation

of the Eighth Amendment, the pivotal inquiry is "whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  An inmate does not have

to show that the harm suffered was sufficiently serious in order to make out a

constitutional violation where excessive force was used, and absence of serious

injury, while relevant, does not end the inquiry.  *Id*. at 7;  *see also Brooks v. Kyler*,

204 F.3d 102, 104 (3d Cir. 2000) ("Following *Hudson*'s focus on the force used, as

opposed to the injury inflicted, we conclude that although the degree of injury is

relevant for any [constitutional violation] analysis, there is no fixed minimum

quantum of injury that a prisoner must prove that he suffered through objective or

independent evidence in order to state a claim for wanton and excessive force").

Whether a prison defendant used objectively unreasonable force requires

careful attention to the facts and circumstances of each particular case.  Those

circumstances include:

> (1) the need for the application of force; (2) the
> relationship between the need and the amount of force
> that was used; (3) the extent of injury inflicted; (4) the
> extent of the threat to the safety of staff and inmates, as
> reasonably perceived by responsible officials on the basis
> of the facts known to them; and (5) any efforts to temper
> the severity of a forceful response." *Brooks [v. Kyler],* 204
> F.3d [102] at 106 [(3d Cir. 2000)]. *De minimis* injuries
> may suffice to state a claim for excessive force. *Id*. at 103.

---

[6]      Wells labels the claim as a "misuse of force."  ECF No. 39, at § VII.

*Smith v. Mensinger,* 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler,* 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). When a court considers such claims, the reasonableness of a particular use of force often depends upon the relevant factual context and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Defendants argue that they are entitled to summary judgment because (1) to the extent any force was used, it was only *de minimis* and (2) the force was applied in a good faith effort to maintain or restore discipline.  According to Defendants, restraints were applied only after Wells became combative and agitated, and it appeared he was hallucinating.  ECF No. 62, at ¶¶ 7, 8, and 10.  Further, once Wells voiced complaints that the restraints were on too tight, the restraints were loosened.  *Id*. at ¶ 14.

Wells responds that he was having a medical emergency and there was no need for restraints.  According to Wells, Defendants should have known of the substantial risk involved in forcefully restraining an actively seizing individual. Wells states he "complained about the pain experienced from the handcuff tightness and plead with correctional personnel to provide relief," ECF No. 68, at ¶ 18, but the handcuffs were only slightly loosened after the medical evaluation was completed. *Id*. at ¶ 14.

After reviewing the summary judgment record, the Court finds there are genuine issues of material facts in dispute.  For example, while Defendants argue

that any injuries Wells suffered were *de minimis,* Wells contends that he was diagnosed as having "handcuff neuropathy" and experienced numbness for at least three months after the incident occurred.  *Id.* at ¶ 19.

Defendants' alternative argument, that the need for the application of force was reasonable, relies entirely on facts in dispute.  Defendants argue that Wells was not showing signs of a seizure, but was combative and aggressive, symptoms more indicative of a drug overdose, rather than a seizure.  Wells disputes this characterization.  He argues his "seizure was perceived as aggression by responding correctional personnel and as a result Wells was placed in restraints."   ECF No. 68, ¶ 8.  In support of his position, Wells provides the Declarations of Michael Oravec and Adam Keely. ECF 68-1 at 27 – 33.  Mr. Oravec states he saw Wells "having what I would call a seizure. . . I could hear Eric moaning/[illegible]/crying out.  I could hear the COs continually ask Eric what drug he took to cause this."  *Id.* at 28.  Similarly, Mr. Keely states that he saw Wells,

> laying on the floor convulsing while another inmate who was calling for help was trying to keep his head from hitting the floor. . . . A group of C.O's showed up first and took over by trying to contain Mr. Wells trying to direct him to obey there (sic) orders.  They then cuffed his wrist and ankles when they couldn't control him and even threatened to mace him if he tried to bite them again . . . ."

*Id.* at 33.  Wells also contends that he was not fully conscious until the seizure began to subside, which was after he was moved to the medical unit.

The version of events offered by Defendants differs dramatically from the version offered by Wells.  It is not clear from the available summary judgment

record whether Wells was a physical threat and what amount of force, if any, was necessary to subdue him.  The Court cannot conclude as a matter of law that the force used was constitutionally permissible.  There are disputed genuine issues of material fact, which if resolved in Wells's favor, would allow a reasonable factfinder to conclude that Wells's constitutional rights were violated.

## IV.    Conclusion

For all these reasons, the Motion for Summary Judgment filed by Defendants will be granted in part and denied in part.  Summary judgment will be granted on Wells's Eighth Amendment deliberate indifference to his serious medical needs claim and denied on Wells's Eighth Amendment excessive force claim.

An appropriate Order follows.

Dated:  September 19, 2024

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

cc:    Eric Dante Wells
       LS-0414
       SCI Mercer
       801 Butler Pike
       Mercer, PA 16137
       (via U.S. First Class Mail)

       Kimberly A. Adams
       PA Department of Corrections
       Office of Chief Counsel
       (via ECF electronic notification)